Roderick Leshun RANKIN *v.* STATE of Arkansas

CR 04-1188                                          227 S.W.3d 924

Supreme Court of Arkansas
Opinion delivered February 9, 2006

*Gerald A. Coleman*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Roderick Leshun Rankin was convicted of three counts of capital murder, and he was sentenced to death in 1996 for the murders of Zena Reynolds, her mother Ernestine Halford, and her stepfather Nathaniel Halford. In his first appeal, Mr. Rankin raised six points of error. We concluded that most of his assignments of error were meritless or procedurally barred from review. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997) (*Rankin I*). However, we held that Mr. Rankin's argument concerning the admission of his incriminating custodial statements was well taken because the record contained no account of a hearing or ruling on Mr. Rankin's suppression motion. *Id.* We remanded the case, with instructions to the trial court to "conduct a hearing on the record for the limited purpose of determining whether Mr. Rankin's statements were made after knowingly and intelligently waiving his right against self incrimination." *Id.* As instructed, the trial court held the hearing on February 25, and March 2, 1998. Mr. Rankin's motion to suppress the incriminating statements was eventually denied by the trial court on October 6, 1998. That ruling was the subject of a second appeal. *Rankin v. State,* 338 Ark. 723, 1 S.W.3d 14 (1999) (*Rankin II*). In *Rankin II*, we affirmed his capital murder convictions. Pursuant to Ark. R. Crim. P. 37.5 (2005), Mr. Rankin now brings the instant appeal, contending that the circuit court erred in denying his petition for postconviction relief. We affirm the circuit court's denial of postconviction relief.

The facts surrounding this case are laid out in detail in *Rankin I.* The murders occurred in the early morning hours of December 27, 1994. Based on the statement of Mr. Rankin's girlfriend, Sonyae Reynolds[1], who was hiding in a closet at the victims' home during the attack, Mr. Rankin became the prime suspect in the murders. According to Ms. Reynolds, Mr. Rankin had repeatedly threatened to kill her and her family if she left him. Moreover, she believed the assailant was Mr. Rankin because the

---

[1] Ms. Reynolds was also the sister of victim Zena Reynolds and the daughter of victim Ernestine Halford.

assailant was wearing clothing similar to clothing worn by Mr. Rankin. During the police interrogation, the investigating officers asked Mr. Rankin if he had kicked in the door of the victims' house and shot the victims. They also asked him if he had experienced problems with Sonyae Reynolds; whether such problems led him to commit the murders; whether he was wearing blue shoes on the morning of the murders; and whether he had seen blood on the shoes. Finally, they asked him whether the gun that they had shown him was the murder weapon and whether he placed it at the location where it was discovered. Mr. Rankin's response to each of these questions was a simple, "Yes, sir." He told the officers that he saw Zena Reynolds and her children on the couch when he first entered the house. It was at this point that he started shooting. According to Mr. Rankin, he shot Zena Reynolds first and then shot Ernestine Halford and Nathaniel Halford. Although Mr. Rankin knew Sonyae Reynolds was also in the house, he got scared and left.

The jury convicted Mr. Rankin of three counts of capital murder. Following the affirmance of those convictions in *Rankin I* and *II*, Mr. Rankin filed a motion for postconviction relief pursuant to Ark. R. Crim. P. 37.5. In his original petition for postconviction relief, Mr. Rankin raised four claims for relief: (1) prosecutorial misconduct, (2) the only aggravator found at the penalty phase is unconstitutional and not supported by the evidence, (3) ineffective assistance of counsel, and (4) actual innocence. Mr. Rankin thereafter filed a *pro se* petition for postconviction relief in which he repeated the above-listed grounds and compiled a laundry list of additional claims based on allegations of prosecutorial misconduct, ineffective assistance of counsel and trial court error. The *pro se* petition bears Mr. Rankin's notarized signature. Subsequently, his appointed counsel filed an amended petition for postconviction relief and incorporated the additional claims raised by Mr. Rankin in the *pro se* petition.[2] Following a hearing on the petitions, the circuit court denied post-conviction relief. On appeal, Mr. Rankin only raises two points of error: (1) The circuit court erred in ruling that counsel did not provide ineffective assistance of counsel when he failed to present signifi-

---

[2] At the hearing, the trial judge made certain that all of the additional points raised in the *pro se* petition were incorporated into the amended petition by stating, "We are taking up *all* the points that have been raised by *any* of the petitions." (Emphasis added.) Both Mr. Rankin and his counsel separately responded, "Yes."

cant mitigation testimony at the penalty phase; and (2) the only aggravating factor found at the penalty phase should, as a matter of law, be held not to outweigh the jury's findings on mitigating circumstances.

Our court has jurisdiction over this appeal of a denial of Rule 37 postconviction relief. *See* Ark. R. Crim. P. 37.3 (2005). In an appeal in a postconviction proceeding, we will not reverse a trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Johnson v. State,* 356 Ark. 534, 157 S.W.3d 151 (2004). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

For his first point on appeal, Mr. Rankin contends that he received ineffective assistance of counsel when his trial counsel failed to present significant mitigation testimony at the penalty phase. Specifically, the argument under this point is that trial counsel failed to call two mitigation witnesses, Mr. Rankin's brother and his aunt, during the sentencing phase. As to Rule 37 claims of ineffective assistance of counsel, the general standard of review is found in *Strickland v. Washington,* 466 U.S. 668 (1984). The *Strickland* two-pronged test first requires the defendant to show that counsel's performance was deficient to the extent that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. There is a strong presumption that counsel's conduct falls within reasonable professional assistance. *Id.* at 689. Counsel is allowed great leeway in making strategic and tactical decisions and those decisions are a matter of professional judgment. *Noel v. State,* 342 Ark. 35, 26 S.W.3d 123 (2000). Matters of trial tactics and strategy are not grounds for postconviction relief on the basis of ineffective assistance of counsel. *Lee v. State,* 343 Ark. 702, 38 S.W.3d 334 (2001).

The second prong of *Strickland* requires a showing of prejudice such that counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687. Our court has described the prejudice contemplated by the *Strickland* test to mean that the defendant must show there is a reasonable probability that, but for counsel's errors, the outcome of the trial — either in the guilt or the penalty phases — would have been different. *See State v. Hardin,* 347 Ark. 62, 60 S.W.3d 397 (2001); *Lasiter v. State,* 290 Ark. 96, 717 S.W.2d 198 (1986).

In this case, Mr. Rankin testified at the Rule 37 hearing that he had wanted his brother and aunt to testify on his behalf during the penalty phase, but his trial counsel, Gene McKissic, would not allow them to testify. In support thereof, Mr. Rankin's brother and aunt confirmed that they were available to testify during the penalty phase, but Mr. McKissic declined to call them as witnesses. Moreover, at the Rule 37 hearing, both witnesses claimed they would have begged the court to spare Mr. Rankin's life if given the opportunity. When asked why Mr. Rankin's brother and aunt were not called to testify during the penalty phase, trial counsel stated that Mr. Rankin instructed him not to call them as witnesses during the sentencing phase. More specifically, Mr. McKissic testified as follows:

> We had talked about calling a number of relatives and I had talked to or spoken with a number of relatives, but [Mr. Rankin] was pretty insistent. We had — I don't want to say an argument, but we had disagreements about that because I advised him that he needed to put his mother on in the event of a conviction to ask the jury to spare her son's life, and he needed to put on his aunt and his brother to testify about certain aspects of his life and he was insistent that no one but the psychiatrist testify. And I don't know that I made the right decision, but I honored what his request was. It wasn't an oversight.

In addition, trial counsel also explained that calling the brother could have been a liability due to a question about the brother's possible involvement in the murder. In addition, trial counsel stated that he pleaded with Mr. Rankin to call his mother as a witness during the sentencing phase. Counsel's plea, however, was met with resistance. Mr. Rankin insisted that she not be called to testify. In fact, at the Rule 37 hearing, Mr. Rankin acknowledged that he did not want his mother testifying on his behalf.[3] Instead, the only person who testified on his behalf during the sentencing phase was a clinical psychologist, Dr. Phillip Murphy, who testified about Mr. Rankin's mental health and his background.

When these issues arise in Rule 37 appeals, the appellant is challenging the trial attorney's judgment or strategy as to which

---

[3] The record reflects that during the sentencing phase Mr. McKissic stated the defense intended to call Mr. Rankin's mother as a witness, but Mr. Rankin advised counsel and the court that he did not wish to have his mother testify on his behalf.

witnesses would be called to testify. In those instances, we have stated that an attorney's decision to call a particular witness is largely a matter of professional judgment and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, itself, proof of counsel's ineffectiveness. *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001). Moreover, we have stated that Rule 37 does not provide a forum to debate trial tactics or strategy, even if the strategy proves improvident. *Id.*

■ The record reveals that trial counsel's original strategy during sentencing was to call both a mental health professional to explain Mr. Rankin's mental illness *and* his mother to plead for her son's life. Mr. Rankin's refusal to call his mother as a witness meant that counsel had to decide whether any other relatives should be called to testify during the penalty phase. He could have elected to put either his client's brother or his aunt, or both, on the witness stand. However, as explained earlier, putting Mr. Rankin's brother on the stand might have been a liability and calling only one relative, his aunt, as a witness would have been less than convincing, especially when immediate family members, such as his mother and brother, were not called to testify on his behalf. Consequently, in light of Mr. Rankin's specific directive that his mother not be called as a witness, trial counsel's decision not to call the brother or the aunt was clearly a question of trial strategy.[4] Thus, we cannot say that the circuit court erred in concluding that Mr. Rankin failed to demonstrate deficient performance on the part of trial counsel; that is, Mr. Rankin failed to show that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland v. Washington, supra.*

■ For his last point on appeal, Mr. Rankin suggests that the aggravating circumstance found by the jury — knowingly created risk of death to persons other than the victim — should not, as a matter of law, outweigh the mitigating circumstances found by the jury — extreme mental or emotional disturbance *and* no significant history of criminal activity. In his petition for

---

[4] In view of our conclusion that Mr. Rankin failed to demonstrate deficient performance on the part of trial counsel, we need not address the prejudice prong set forth in *Strickland v. Washington, supra.*

postconviction relief, Mr. Rankin argued that "the only aggravator found at the penalty phase is unconstitutional and not supported by the evidence." Under that argument, he further stated, "The aggravator, as a matter of law, should not be allowed to outweigh such mitigating circumstances." On appeal, Mr. Rankin has clearly abandoned his argument that the aggravator found by the jury is unconstitutional. Instead, he limits his argument on appeal to one brief paragraph in which he merely repeats, without citation to authority or convincing argument, that the aggravator, as a matter of law, should not outweigh the mitigating circumstances. Mr. Rankin does not use the postconviction proceeding to claim that his counsel at trial and on appeal was ineffective for failing to object to the jury's findings; rather, he seeks reversal of the death sentence. Rule 37 does not provide a remedy when an issue could have been raised in the trial or argued on appeal. *Weaver v. State*, 339 Ark. 97, 3 S.W.3d 323 (1999). Our court has specifically held in *Neal v. State*, 270 Ark. 442, 605 S.W.2d 421 (1980), that Rule 37 does not allow a petitioner to raise questions which might have been raised at trial or on appeal, unless they are so fundamental as to render the judgment void and open to collateral attack. *Weaver v. State, supra.* If Mr. Rankin had wanted to challenge the jury's imposition of the death sentence, he should have done so before now by preserving the issue during his trial and raising it on direct appeal.

Affirmed.

DICKEY, J., not participating.

Special Justice J. BRENT STANDRIDGE joins.