# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3140

_____

United States of America,

            Appellee,

v.

Mitchell Scott Johnson,

            Appellant.

\* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Western District of Arkansas.

_____

Submitted: April 15, 2009
Filed: July 10, 2009 (corrected 7/13/09)

_____

Before WOLLMAN, MELLOY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Following a jury trial, Mitchell Scott Johnson was convicted of possessing a firearm as an unlawful user of a controlled substance, marijuana, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The district court[1] sentenced Johnson to 48 months' imprisonment and three years' supervised release. Johnson appeals his conviction and sentence. For the following reasons, we affirm.

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

# I.    BACKGROUND

On January 1, 2007, Washington County, Arkansas Detective Steven Hulsey received an anonymous tip that Mitchell Johnson and his roommate, Justin Trammel, were in possession of firearms and large quantities of marijuana. Detective Hulsey observed Johnson and Trammel in a van. After stopping and approaching the van, Detective Hulsey smelled the odor of burnt marijuana. Johnson, the owner of the van, gave verbal and written consent to Detective Hulsey to search the van. With Johnson's consent, Detective Hulsey patted Johnson down and found, in his pants pocket, a plastic baggie of marijuana, which Johnson said was what Detective Hulsey was "looking for" and described it as "a little bit of weed." Detective Hulsey arrested Johnson for possession of marijuana and then asked whether there were any weapons in the car. Johnson told Detective Hulsey that there was a loaded firearm in the rear of the van. Johnson then informed another officer that the marijuana had been in his possession for a while and that it was for "personal use." During the search of the vehicle, a third officer located a loaded Lorcin 9 millimeter handgun in the back of the van.

During Johnson's two-day trial, the Government elicited testimony regarding his use of marijuana and possession of the handgun. Dustin Wynboom, Johnson's former coworker, testified that between October or November 2006 and January 1, 2007, he and Johnson smoked marijuana together once every week or two weeks, including once in the parking lot of the Wal-Mart where they both worked. Dustin Wynboom also testified that Johnson brought a Lorcin handgun to his residence and showed it to him and his wife, Vanessa Wynboom. Vanessa Wynboom, another former coworker of Johnson's, also testified that she had observed Johnson smoking marijuana once every other week and that he frequently came to work acting as though he had recently smoked marijuana. Michael Lindsey, another former coworker of Johnson's, testified that he smoked marijuana with Johnson two or three times between November 2006 and January 1, 2007, and that Johnson sometimes appeared

to be under the influence of marijuana at work. Lindsey also testified that he saw Johnson's gun at Johnson's home over the Christmas holiday in 2006. In addition, the Government presented evidence that the handgun had traveled in interstate commerce and that the substance in the plastic baggie found in Johnson's pants pocket was, in fact, marijuana. The jury found Johnson guilty of possessing a firearm while being an unlawful user of marijuana.

Johnson's Presentence Investigation Report ("PSR") calculated a total offense level of 14 and a criminal history category of II, which resulted in an advisory sentencing guidelines range of 18 to 24 months' imprisonment. However, paragraph 63 of the PSR, to which Johnson objected, addressed the possibility of an upward departure under United States Sentencing Guideline § 4A1.3, if the court were to find that Johnson's criminal history category substantially under-represented the seriousness of his criminal history or that Johnson was likely to commit other crimes. The PSR assigned Johnson only two criminal history points under U.S.S.G. § 4A1.2(d)(2)(A) for his 1998 guilty plea as a juvenile to five counts of capital murder and ten counts of first-degree battery for killing five and shooting another ten students and teachers at the Westside Middle School in Jonesboro, Arkansas. At the time of the shooting, Johnson was thirteen years old. He was sentenced to confinement in a juvenile facility until the age of eighteen, the maximum sentence under Arkansas law at the time. Johnson then served three additional years in federal prison for juvenile federal firearms convictions related to the school shooting and was released from federal custody on his twenty-first birthday in August 2005, after serving a total of seven years in state and federal custody. Johnson received no criminal history points as a result of his juvenile federal conviction.

At the sentencing hearing, the Government filed a motion for an upward departure, arguing that Johnson's criminal history category significantly under-represented the severity of his prior criminal conduct because his prior convictions as a juvenile led to his receiving fewer criminal history points than would have been

assigned for a similar adult conviction. The Government also argued that Johnson, as a younger offender who received lenient treatment, posed a greater risk of recidivism. *See* U.S.S.G. § 4A1.3 cmt. background. In addition, the Government presented testimony from Lieutenant Jon Simpson of the Bentonville, Arkansas Police Department regarding Johnson's pending state charges in Benton County, Arkansas. According to Lieutenant Simpson, in February 2008, a customer left his credit card at the convenience store where Johnson worked. Johnson used the credit card to purchase gas and attempted to obtain money from an ATM. While discussing the stolen credit card with Benton County officers, Johnson agreed to a search of his person. The officers discovered he had marijuana. Johnson was charged with theft, financial identity fraud, and marijuana possession. The Government argued that this evidence also demonstrated a strong likelihood of recidivism, which would make an upward departure appropriate under § 4A1.3. Finally, the Government argued that an upward variance was warranted under 18 U.S.C. § 3553(a) for the same reasons the upward departure was appropriate.

Johnson opposed any upward departure or variance, arguing that he received the maximum sentence he could have received for his juvenile offense, so the sentence was not lenient. He also argued that the § 3553(a) factors supported a sentence within the guidelines range for the instant offense—possession of a firearm while being an unlawful user of marijuana.

The district court determined that the PSR correctly identified the advisory sentencing guidelines range of 18 to 24 months based on a total offense level of 14 and a criminal history category of II. *See* U.S.S.G. § 2K2.1(a)(6)(A) (stating that the offense level should be set at "14, if the defendant . . . was a prohibited person at the time the defendant committed the instant offense," where a prohibited person includes an unlawful user of marijuana who possesses a firearm). After considering the Government's motion for an upward departure, the district court found that there was "clearly reliable information, that this criminal history category, based on the juvenile

conviction, as it properly is, does substantially under-represent the seriousness of Johnson's criminal history." Accordingly, the court departed to an offense level of 20, the offense level that would apply if Johnson's capital murder and first-degree battery convictions were adult convictions. *See* U.S.S.G. § 2K2.1(a)(4)(A) (stating that the offense level should be set at "20, if . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense").[2] Again considering Johnson's prior juvenile offenses as adult convictions, the district court departed to a criminal history category of III after adding three criminal history points under U.S.S.G. § 4A1.1(a) and two points under § 4A1.1(e), for a total of five criminal history points.[3] The offense level of 20 and criminal history category of III resulted in an advisory guidelines range of 41 to 51 months' imprisonment.

The district court went on to explain that "even if [it] did not accept the motion for upward departure, not being constrained by mandatory sentencing guidelines, the Court would, and does, believe that a sentence in the neighborhood of [41 to 51 months' imprisonment] would, nonetheless, be appropriate in light of the [18 U.S.C.] Section 3553(a) considerations." The district court acknowledged the § 3553(a) factors: the need for a sentence to reflect the nature and circumstances of the offense, the history and characteristics of the defendant, and the seriousness of the offense; to promote respect for the law; to provide a just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from the

---

[2]Johnson's previous convictions as a juvenile are not considered to be felony convictions under the sentencing guidelines. *See* U.S.S.G. § 4A1.1 cmt n.1 ("A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under [§ 4A1.1(a)] only if it resulted from an adult conviction.").

[3]Under this scenario, because Johnson received three criminal history points under U.S.S.G. § 4A1.1(a), he would not also receive the two points he initially received under § 4A1.2(d)(2)(A).

defendant's further crimes. In determining that an upward variance would be appropriate, the district court said

> even if the Court started with a total offense level of 14 and a criminal history category of [II], in light of the history and characteristics of this defendant, and the fact that after the commission of the acts that, admittedly, were done when he was a very young man, that he has again placed himself in possession of a firearm, remembering that the murders of the young people in Jonesboro were committed with stolen firearms that this young man and his colleagues in that endeavor had stolen, which resulted in federal gun charges, as I recall, that he again has placed himself in possession of a gun is a very, very worrisome concern.

The district court further explained that a lower sentence, within the initial guidelines range of 18 to 24 months' imprisonment, would not promote respect for the law and would not protect the public from likely future criminal acts by Johnson.

Ultimately, the district court determined that a sentence of 48 months' imprisonment was appropriate based on the upward departure or, alternatively, an upward variance. Johnson appeals, contending that his conviction was based on insufficient evidence, that the district court procedurally erred in imposing the sentence, and that the sentence was substantively unreasonable.

## II.   DISCUSSION

### A.  Johnson's Challenge to the Sufficiency of the Evidence

Johnson argues that the evidence was insufficient to prove beyond a reasonable doubt that he was a user of marijuana. "We review challenges to the sufficiency of the evidence presented at trial de novo and reverse only if no reasonable jury could find guilt beyond a reasonable doubt. In conducting this review, we view the evidence in the light most favorable to the verdict, giving the verdict the benefit of all

reasonable inferences." *United States v. Hayes*, 518 F.3d 989, 993 (8th Cir.), *cert. denied*, 555 U.S. ---, 129 S. Ct. 254 (2008).

The statute under which Johnson was convicted, 18 U.S.C. § 922(g)(3), states that "[i]t shall be unlawful for any person who is an unlawful user of . . . any controlled substance . . . to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." We have held that to establish that a defendant was an unlawful user of marijuana while possessing a firearm, "18 U.S.C. § 922(g)(3) does not require proof of contemporaneous use of a controlled substance and possession of a firearm." *United States v. Mack*, 343 F.3d 929, 933 (8th Cir. 2003).

The Government provided sufficient evidence that Johnson was an unlawful user of marijuana. In particular, the Government presented testimony that Johnson had 19.3 grams of marijuana on his person on the night of his arrest and that he admitted that this marijuana was for "personal use." Even if Johnson had not admitted that the marijuana was for personal use, the small amount of marijuana in his possession supports the inference that he was a user of marijuana. *See id*. at 934-35 (finding that it was permissible for the jury to infer user status based on the defendant's possession of a user quantity of drugs); *see also United States v. Oleson*, 310 F.3d 1085, 1090 (8th Cir. 2002) (same). Moreover, the Government elicited testimony from several of Johnson's former coworkers who had witnessed his regular use of marijuana. Dustin Wynboom testified that he and Johnson smoked marijuana together at least once every other week, including one time in the parking lot of their employer, and Vanessa Wynboom testified that she observed Johnson acting as though he was under the influence of marijuana at work on multiple occasions. Michael Lindsey also testified that he smoked marijuana with Johnson more than once before January 1, 2007.

Johnson argues that the evidence was insufficient to establish the temporal nexus between his drug use and his possession of the firearm, which he claims he received as a Christmas present just before his January 2007 arrest. However, as we have said, "the government does not need to prove that the defendant was actually using . . . drugs at the exact moment that he purchased the firearms in question in order to be convicted as an 'unlawful user.'" *United States v. McIntosh*, 23 F.3d 1454, 1458 (8th Cir. 1994). The Government need only prove that Johnson was an unlawful user of marijuana at the time he possessed the firearm. *See id.*; *see also Mack*, 343 F.3d at 933. The Government presented evidence that Johnson had smoked marijuana regularly between October or November 2006 and January 2007, that he had a user amount of marijuana on his person at the time of his arrest, which he admitted was for his "personal use," and that he possessed a Lorcin 9 millimeter firearm in his van at the time of his arrest. Thus, the jury could have reasonably concluded that Johnson was an unlawful user of marijuana in possession of a firearm.

**B. Johnson's Challenge to the Sentence**

Johnson challenges his sentence, claiming that the district court procedurally erred and that the sentence was substantively unreasonable. We review a district court's sentence for reasonableness, applying the "familiar abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 594 (2007). We first review for significant procedural error and then for substantive reasonableness. *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2009). A procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597. We review substantive reasonableness under the "deferential abuse-of-discretion standard." *Id.*

Here, Johnson does not dispute that the initial advisory guidelines range of 18 to 24 months' imprisonment was correctly calculated. Nevertheless, Johnson argues that the district court procedurally erred in granting the upward departure because his juvenile convictions were already accounted for by his criminal history points under the initial guidelines range, so the upward departure "double counted" his criminal history, and because his sentences for his juvenile convictions were not lenient, as they were the maximum available under the law at the time.

In reviewing a district court's sentence, we have held that

> [i]n most cases "if the sentence was imposed as the result of an incorrect application of the guidelines, we will remand for resentencing as required by 18 U.S.C. § 3472(f)(1) without reaching the reasonableness of the resulting sentence in light of § 3553(a)." *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005). There may, however, "be situations where an error in calculating the appropriate guideline range is harmless and, therefore, does not require immediate remand." *Id.* . . . "[T]o support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range." *United States v. Icaza*, 492 F.3d 967, 971 (8th Cir. 2007).

*United States v. Johnston*, 533 F.3d 972, 978 (8th Cir. 2008) (alterations omitted).

Even assuming that the district court procedurally erred in this case by granting the Government's motion for an upward departure, we conclude that any such error would be harmless, and we affirm Johnson's sentence based on the district court's alternative decision to impose an upward variance based on the § 3553(a) factors.[4]

_____

[4]By adopting a harmless-error analysis, we do not suggest that the district court procedurally erred in granting the upward departure. For example, Johnson argues that the upward departure was improper because his juvenile sentences were not

The district court explained that had it not granted the upward departure and started instead with the undisputedly-correct advisory guidelines range of 18 to 24 months' imprisonment, it still would have imposed a sentence of 48 months based on the § 3553(a) factors. The court clearly and thoroughly discussed the factors and concluded that 48 months' imprisonment was an appropriate sentence based on Johnson's history and characteristics and the need for a sentence to protect the public from Johnson's future crimes, to promote respect for the law, to deter future criminal conduct, to provide a just punishment for the offense, and to reflect the seriousness of the offense. Given Johnson's involvement with drugs and firearms less than two years after his release from federal custody, the heinous nature of his previous crimes, and his relatively lenient prior sentences, and given that we must review sentences "under a deferential abuse-of-discretion standard," *Gall*, 128 S. Ct. at 591, we conclude that the district court did not abuse its discretion in imposing a sentence of 48 months' imprisonment. Therefore, we conclude that the district court's sentence was not unreasonable.

---

lenient, as they were the maximum allowable at the time. We note, however, that he served only four years for five counts of capital murder and ten counts of first-degree battery, which is unquestionably lenient compared to the sentence an adult convicted of a comparable crime would have received. *Cf. Rankin v. State*, 227 S.W.3d 924, 925 (Ark. 2006) (upholding death sentence for adult defendant convicted of three counts of capital murder). Johnson also argues that the district court improperly "double counted" his criminal history in granting the upward departure, but we have previously stated that "[n]either the guidelines nor the commentary prohibit considering convictions also used to award criminal-history points," *United States v. Yahnke*, 395 F.3d 823, 825 (8th Cir. 2005). Finally, the fact that Johnson was arrested on the current charges less than two years after being released from custody based on his juvenile convictions demonstrates his high risk of recidivism. *See* U.S.S.G. § 4A1.1(e).

## III. CONCLUSION

Accordingly, we affirm Johnson's conviction and sentence.

_____