Cite as 2022 Ark. 138

# SUPREME COURT OF ARKANSAS

No. CR–20–642

| | | |
|---|---|---|
| ROBERT HOLLAND | | **Opinion Delivered:** June 16, 2022 |
| | APPELLANT | APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40CR-13-2] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JODI RAINES DENNIS, JUDGE |
| | APPELLEE | |
| | | <u>AFFIRMED</u>. |

**RHONDA K. WOOD, Associate Justice**

Robert Holland was sentenced to death for capital murder. He now appeals the circuit court's denial of his Rule 37 petition for ineffective assistance of counsel. We affirm.

I. *Background*

Holland was convicted of, and sentenced to death for, the capital murder of his cellmate at the Cummins Unit of the Division of Correction. While incarcerated for the murder of his parents, Holland strangled his cellmate. We affirmed Holland's conviction and death-penalty sentence on direct appeal. *Holland v. State*, 2015 Ark. 318, 468 S.W.3d 782.

Holland then filed a petition for postconviction relief with the circuit court under Arkansas Rule of Criminal Procedure 37.5. He argued that his counsel, John Cone and Rebekah Kennedy, were constitutionally ineffective for multiple reasons. The circuit court held a Rule 37.5 hearing during which his trial counsel testified. The circuit court denied Holland's Rule 37.5 petition. Holland now appeals that denial.

II. *Analysis*

A. Standard of Review

Our standard for ineffective-assistance-of-counsel claims is a two-prong test from *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail under *Strickland*, the petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Coakley v. State*, 2021 Ark. 207, at 2, 633 S.W.3d 328, 330.

In evaluating the first prong, deficient performance, we presume counsel was effective, and allegations without factual substantiation cannot overcome that presumption. *Id*. The petitioner has the burden of identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*.

As for the second prong, ineffectiveness claims alleging deficiency in attorney performance must affirmatively prove prejudice. *Smith v. State*, 2016 Ark. 417, at 3, 504 S.W.3d 595, 597. The petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine the confidence in the outcome of the trial. *Id*.

We will not reverse a circuit court's denial of a Rule 37.5 petition unless the circuit court's findings are clearly erroneous. *Coakley*, 2021 Ark. 207, at 3, 633 S.W.3d at 330. A finding is clearly erroneous when, although there is evidence to support it, the appellate

court, after reviewing the entire evidence, has a firm conviction there has been a mistake.

*Id*.

B. Pretrial: Failure to Object to Holland's Appearing Before Jury in Handcuffs and Failure to Appeal Ruling

First, Holland argued his trial counsel failed to object to the use of handcuff restraints at the beginning of the first day of his jury trial and that this was ineffective assistance of counsel.  But this isolates one segment of the case regarding his attorney's protection of Holland's due process interest.

Holland's counsel filed a pretrial motion for Holland to appear in civilian clothes and without restraints. At the hearing on the motion, Judge Jodi Dennis agreed and ruled Holland would appear in the courtroom without handcuffs or arm restraints and in civilian clothes. But on the first morning of trial an issue arose concerning the availability of restraints. As Holland's attorney explained to the new trial court judge, in chambers, before voir dire began:

> One more thing on the record. [Judge] Jodi Dennis did make a ruling that he was to be – appear in the courtroom without handcuffs. The ADC people say that today, for reasons – various reasons, they are going to have to have him walk into the courtroom with the handcuffs, sit him down, take the handcuffs off once he is sitted down – seated. They're in charge of security. We don't have a problem with that . . . tomorrow and the next day, they have a device that they can put on him where he won't have to go in the courtroom with the handcuffs. All we're asking today is that he, as unobtrusively as possible, go in and the handcuffs be removed, taken out of the way.

The trial court agreed and ruled that the handcuffs be removed unobtrusively on that first day once Holland was seated.

Due process does not permit the routine use of visible restraints if the circuit court has not considered the circumstances of the particular case. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007) (citing *Deck v. Missouri*, 544 U.S. 622 (2005)). Holland's contention that any use of handcuffs is prohibited is inaccurate. In *Deck*, the Supreme Court held "that the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. at 624 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986)). *Deck* also held that an essential state interest may be courtroom decorum, which was the concern Holland's attorney testified to at the Rule 37 hearing. *Id*. at 628. When determining whether a particular physical restraint is justified, a circuit court may take such steps as are reasonably necessary to maintain order in the courtroom, though restraints are not per se prejudicial. *Williams v. State*, 347 Ark. 728, 747–48, 67 S.W.3d 548, 559–60 (2002).

We do not agree that Holland's counsel was deficient in failing to object to the use of restraints and preventing Holland from being seated in handcuffs the first day of his jury trial. Handcuffs were used only after the circuit court considered the circumstances of this case, which comports with *Deck*. Trial counsel properly moved for Holland not to have restraints on him at trial and was successful on that motion. Only after discovering that the Division of Correction had no other safe means to bring Holland into the courtroom and seat him the first day, did Holland's counsel stipulate to Holland entering in handcuffs and

4

being restrained for that short period of time.[1] And counsel knew that in addition to the current capital-murder charge, Holland was already serving a sentence for the murder of his parents. Holland's trial counsel stipulating to this was not deficient such that it denied Holland of his right to counsel.

Under *Deck*, a constitutional violation occurs only if the shackles are visible to the jury without the court weighing their use and necessity. The record here demonstrates the court weighed their use on two occasions. This comports with *Deck*; thus, we cannot say counsel was ineffective for failing to object.[2]

### C. Voir Dire: Failure to Life Qualify Jurors, to Test for Mitigation-Impaired Jurors, and to Exclude Juror Davis

Holland's next ineffective-assistance-of-counsel argument arose from conduct during jury selection. He asserted that his attorneys failed to life qualify the jurors, failed to test for mitigation-impaired jurors, and should have moved to exclude one specific juror, Betty Davis.

To prevail on an allegation of ineffective assistance of counsel over jury selection, Holland first must overcome the "heavy burden" and presumption that jurors are unbiased.

---

[1]We also note that the trial record is devoid of any evidence that the jury panel saw Holland in handcuffs. As this occurred on the first day of trial, jury selection had not yet started, and therefore, no jurors were empaneled. The record does not tell us whether the jury pool was in the courtroom or a waiting room when Holland entered. Holland failed to prove that any venire members saw him in the restraints.

[2]Holland also argues his appellate counsel was ineffective for not appealing the ruling that he would enter the courtroom with handcuffs. He claims his conviction and sentence would have been reversed had his appellate counsel argued the issue on his direct appeal. For the same reasons discussed above, we also reject this argument.

5

*Howard v. State*, 367 Ark. 18, 36–37, 238 S.W.3d 24, 39–40 (2006). To accomplish this, he must show actual bias, and the actual bias must have been sufficient to prejudice him to the degree that he was denied a fair trial. *Id*. Bare allegations of prejudice by counsel's conduct during voir dire that are unsupported by any showing of actual prejudice do not establish ineffective assistance of counsel. *Id*.

Holland first asserted that his counsel failed to life qualify and explore mitigation impairment with several jurors: Danny Chambliss, Lauren Light, Billy Holmes, Betty Davis, Jerry Courson, and Jeremy Blevins. We agree with the circuit court that Holland has failed to show that his defense was constitutionally ineffective on this point.

As to Juror Chambliss, Holland asserted he was an "automatic death penalty juror," meaning that Chambliss would automatically sentence Holland to death if he was found guilty of capital murder. This record shows otherwise. During voir dire, Holland's attorney asked Chambliss his feeling about the death penalty, and Chambliss responded: "It's – it's serious. It takes a lot of studying to convince one way or the other to choose for that or not for that." Cone also asked Chambliss if he understood that the default punishment for capital murder is life and that "it takes more than just finding someone guilty of capital murder . . . to give them the death penalty." Chambliss replied, "I understand that, yes. Because there is a possibility of two options here." Cone further instructed him that there is no automatic death penalty in Arkansas, and Chambliss explained that he understood that. The record does not show Chambliss was inclined toward a death sentence.

Similarly, the State instructed Jurors Light and Holmes that if they felt that the death penalty was not appropriate, "life without parole would be the only option." Both agreed.

6

And in response to Holland's counsel's questions, Holmes stated that he could consider life under the right circumstances. Both also affirmed that they understood that the death penalty is not automatic for capital murder and that they could "follow [their] conscience" and vote for a life sentence even if they found that the aggravators outweighed the mitigators.

Betty Davis likewise stated she understood that, as a juror, she could only consider death if she concluded that aggravating evidence outweighed mitigating evidence. She also stated her belief that, even if the aggravators outweighed the mitigators, a juror should be able to decide "I do not want to impose the death penalty." She stated that she could do that if chosen.

Holland's counsel also explained to Courson and Blevins the sentencing process, including the weighing of aggravators and mitigators. Courson agreed he could vote for life even if the aggravators outweighed the mitigators. And Blevins stated that even if she were the only juror to believe that a death sentence should not be imposed, she could still "stand by" her decision.

Given each of the jurors' responses, we affirm the circuit court's finding that his counsel's performance was not deficient because Holland's counsel was not ineffective. During voir dire, counsel tried to discern whether the jurors would automatically sentence Holland with the death penalty or if, instead, they would consider mitigating circumstances. As outlined above, each of the jurors indicated that they were open to considering life rather than death. And the circuit court emphasized that Holland's counsel testified he did not place anyone on the jury that he felt would consider only a sentence of death. We affirm the circuit court's conclusion that counsel's performance at voir dire was not deficient.

Holland also specifically challenged his attorneys' decision to seat juror Betty Davis. Davis's stepfather had been murdered, and the prosecutor in Holland's case had also prosecuted the murderer of Davis's stepfather. Still, during voir dire, Davis stated that she "was not involved in [that] case" and could be an impartial juror and fair to both parties. As to the death penalty, she said it "would have to be an extreme case" before she could make that decision.

At the Rule 37 hearing, Cone explained that Davis's statements about the death penalty, as well as her demeanor, were of the type he was looking for in a juror. Thus, Davis's answers showed that she was not biased against Holland, and the decision to keep Davis was a matter of trial strategy. Because Holland has failed to demonstrate that Davis was biased or that he was prejudiced by Davis, we conclude that the circuit court did not err in denying relief on this issue. *See Howard*, 367 Ark. at 37–40, 238 S.W.3d at 39–41.

## D. Sentencing Phase: Failure to Prepare and Introduce Witnesses and Exhibits in Support of Mitigation

Third, Holland argues that his counsel was deficient because they failed to prepare and introduce witnesses or exhibits on mitigation for sentencing. He claims that his counsel failed to prepare his cousin, James Pierson, and Tyler Green, a mitigation expert who researched his family history and mental-health records, to testify at sentencing. He also argues that his counsel should have called them to testify and that his counsel failed to introduce mitigation exhibits, such as his children's home records and psychological evaluations. The circuit court found that Holland's counsel prepared the mitigation evidence but that, as a matter of trial strategy, they elected not to introduce it.

8

At the Rule 37.5 hearing, Cone disputed that he had failed to prepare mitigation evidence. He stated that he and Green had thoroughly discussed all the mitigation evidence that Green had uncovered and that he was prepared to call Pierson and Green. Thus, Holland's argument that mitigation evidence was not prepared for sentencing is not supported by the record.

Cone also testified that Holland had instructed him not to present mitigation evidence. So he cannot now claim that this decision, which he helped make, rendered his counsel ineffective. *See Schriro v. Landrigan*, 550 U.S. 465, 475–77 (2007). At sentencing, Holland stated on the record that he did not want to present any evidence. Indeed, Cone asked Holland whether he wanted to call Pierson and Green to testify. Holland stated, "I would rather not. I don't want them – I don't want them to testify as witnesses." Cone was prepared to present Pierson's and Green's testimony, but Holland was adamant that he did not want to call them as witnesses.

Further, counsel's decision not to introduce mitigation testimony and evidence was a trial strategy, which is not a ground for ineffectiveness. *See Howard*, 367 Ark. at 36–40, 238 S.W.3d at 38–41. Cone explained two reasons why he decided not to present mitigation evidence. First, Holland had threatened to tell the jury that he would kill again if he did not receive the death penalty. Cone thought that allowing Pierson and Green to testify would trigger Holland into making such an outrageous statement in front of the jury. Thus, he did not think the benefit of introducing the evidence outweighed the risk of Holland threatening to kill others. Second, Cone did not want evidence that Holland had murdered his parents to be admitted. If counsel introduced mitigation witnesses and documents, the

9

jurors would have known the details of his previous murders. Thus, counsel's decision to not present the testimony of Pierson or Green was a trial tactic, which even if improvident, was not a ground for finding ineffective assistance of counsel. *Id*. We, therefore, find no error.[3]

E. Jury Instructions: Failure to Submit Nonstatutory Mitigators

Holland next argued that his counsel was ineffective for failing to submit six nonstatutory mitigators to the jury. The mitigators he proposed should have been offered are that he was (1) truthful in his admission of the crime; (2) cooperative with law enforcement after the murder; (3) willing to accept responsibility for his actions; (4) placed in punitive isolation for an extended period of time before committing the murder; (5) a model inmate in that he had no law violations in prison for over twenty years; and (6) not a threat or problem in a single-man cell.

On this issue, Cone testified that he considered the potential mitigators but did not want to draw attention to the way the murder was committed. Again, he testified his client asked him not to present the mitigating evidence. He also testified that he had considered submitting mitigators about Holland's honesty and cooperation following the murder but did not want to call attention to the "enormously aggravating manner" in which he had committed the murder. Thus, this strategic decision falls within the realm of counsel's professional judgment and is not a ground for finding ineffective assistance of counsel. *See Howard*, 367 Ark. at 45–48, 238 S.W.3d at 45–47.

---

[3]Holland also argues that his counsel was deficient for advising him not to put on mitigation evidence. For these same reasons, this argument also fails.

F. Closing Argument: Failure to Emphasize Mercy

Holland also argues that his counsel was ineffective for failing to emphasize and argue mercy to the jury. But during her closing argument for Holland, Kennedy did emphasize the concept of mercy, though she did not use that precise word. Kennedy's closing argument told the story of Saint Telemachus, who said, "In God's name, forbear" to prevent two men from killing each other. She also told the jury that the appropriate sentence for Holland was life without the possibility of parole. Thus, given these circumstances, like the circuit court, we cannot say that failing to say "mercy" to the jury was deficient.

G. Unredacted Petition

Finally, Holland claimed that the circuit court's denial of his request to file an amended unredacted petition under seal was erroneous. We cannot review this decision because Holland failed to proffer an unredacted version of his amended petition. Because there is no record of the unredacted petition, we cannot determine whether the circuit court's decision to deny the request was an abuse of discretion. *See, e.g.*, *Duque v. Oshman's Sporting Goods Servs., Inc.*, 327 Ark. 224, 226, 937 S.W.2d 179, 180 (1997) ("Failure to proffer evidence so that we can see if prejudice results from its exclusion precludes review of the evidence on appeal.").

Affirmed.

WEBB, J., dissents.

**BARBARA W. WEBB, Justice, dissenting**. I dissent. As the majority correctly notes, in *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that the Constitution forbids the use of visible shackles "unless that use is 'justified by an essential

11

state interest'—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. at 624 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986)). Prior to Mr. Holland's trial, the circuit court conducted a hearing and issued an order regarding how Mr. Holland was to be restrained. Arguably, this was the proper exercise of the trial court's discretion countenanced by *Deck*. However, in the case before us, the circuit court's order was simply not followed.

As decided by the circuit court in the pretrial hearing, Mr. Holland was to be free of visible handcuffs, and was to be restrained by an "electric belt." Inexplicably, the electric belt was not brought with Mr. Holland when he was transported from the prison. It is not disputed that the electric belt was not used at all on the first day of trial. The record reflects that prison officials remembered the electric belt on the second and third days of the trial. Not only did that subsequent remedial action fail to erase the fact that Mr. Holland was handcuffed when he first appeared in court, it is also a tacit acknowledgement of the wrongfulness of what occurred on the first day of trial. If prejudice could be erased by removing the handcuffs "unobtrusively," why was it necessary to use the electric belt?

The majority's assertion that the record was insufficient to support a finding that Mr. Holland was prejudiced by his counsel's failure to oppose his appearing in the courtroom in restraints, was precisely the argument made to, and quickly rejected by, the *Deck* Court. If the jury venire was not present, why would Mr. Holland's trial counsel request that the handcuffs be removed "as unobtrusively as possible"? Further, absent from the record is any attempt by Mr. Holland's trial counsel to mitigate the situation by requesting a delay in the proceedings until the electric belt could be obtained from the prison. Finally, the failure to

make a more extensive record is itself proof of the ineffectiveness of Mr. Holland's trial counsel. *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002).

Under *Deck*, prejudice is inherent and presumed. 544 U.S. at 635 (citing *Holbrook*, 475 U.S. at 568). Accordingly, the State is required to prove beyond a reasonable doubt that the visible restraints of any kind did not contribute to the verdict. *Deck*, 544 U.S. at 635. The State did not even attempt to meet this burden.

Mr. Holland's appellate counsel was also ineffective. While I am mindful of the *Deck* Court's acknowledgement that the trial court had the discretion to order restraints, it could only do so if there were "indisputably good reasons for shackling." *Id*. This issue was completely ignored in Mr. Holland's direct appeal. While I decline to speculate as to whether this case was one in which there are "indisputably good reasons for shackling"— the standard set forth in *Deck*—it is certainly not an issue that would be frivolous to appeal.

I respectfully dissent.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.