Cite as 2022 Ark. 191

# SUPREME COURT OF ARKANSAS

No. CR-22-176

| | |
|---|---|
| | **Opinion Delivered:** October 27, 2022 |
| CHRIS ANTHONY ARNOLD | |
| APPELLANT | |
| | APPEAL FROM THE PULASKI |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 60CR-17-534] |
| STATE OF ARKANSAS | |
| | HONORABLE HERBERT T. WRIGHT, |
| APPELLEE | JUDGE |
| | |
| | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On September 20, 2017, a Pulaski County Circuit Court jury convicted appellant,

Chris Anthony Arnold, of first-degree murder in the death of Maureen Jones and sentenced

him to life imprisonment. We affirmed his conviction and sentence in *Arnold v. State*, 2018

Ark. 343, at 1–3, 561 S.W.3d 727, 728–29. The relevant facts as we recounted in Arnold's

direct appeal are as follows:

> Pauline Arnold ("Pauline"), Arnold's mother and Maureen's friend, regularly
> attended a bible study at Indianhead Baptist Church in Sherwood on Wednesday
> nights. Pauline stated that she and Maureen sat together at the bible study on
> Wednesday, November 30, 2016, and then Maureen headed home. The next
> morning, Pauline received a call from Lois Olsen ("Lois"), the church secretary,
> because Maureen had not attended a church breakfast meeting. Pauline proceeded to
> Maureen's home to check on her. When Pauline arrived at the residence, she entered
> through an unlocked back door and found Maureen in the hallway lying face down
> and partially clothed with a feminine-hygiene pad between her legs. Pauline stated

that Maureen's body felt cold, and she called 911. Lois and Gary Brewer ("Gary") also entered the home. Pauline and Gary covered Maureen with a blanket because "she [wasn't] decent."

Officers from the Sherwood Police Department were dispatched to the victim's home to investigate a homicide. Detective Kisha Slaton testified at a pretrial hearing that Pauline stated, "Well, my son was just over here [at the house fishing] last night, and he didn't say there was anything wrong with her." Detective Slaton asked Pauline to call Arnold and then told Arnold to meet the officers at the police department for an interview. Emergency personnel later arrived and pronounced Maureen dead at the scene. Officers observed bruising, blood, and possible trauma to Maureen's face. A dark-colored scarf was tied around her neck, and her undergarments were found lying approximately five feet away. Officers also noticed a chemical odor consistent with bleach. They retrieved an off-white piece of a latex glove and a small blue piece of plastic and sent the two objects to the Arkansas State Crime Laboratory for testing. An autopsy revealed that Maureen's cause of death was ligature strangulation. Subsequent testing revealed that Arnold's DNA was present on both of Maureen's hands. Tests also confirmed the presence of Arnold's DNA on the pieces of latex glove and plastic.

Detective Slaton and Detective Frank Spence interviewed Arnold at the Sherwood Police Department. In a statement to police, Arnold related that Maureen had allowed him to use her flat-bottomed boat and that he had been fishing at her house on the night of the murder. Arnold stated that he had seen Maureen feed her cats and then fall down the back-porch steps. He also stated that her face was bleeding and that he picked her up, carried her onto the porch, and placed her in front of a chair so that she could sit down. He claimed that Maureen slapped him and said, "[Y]ou don't need to do this. I don't need help[.]" According to Arnold, Maureen walked into the house and began arguing with someone. He told the officer, "[S]he was arguing with somebody, I don't know who the hell it was. But I told Maureen I was getting the hell out of there because she was getting cranky."

On February 23, 2019, Arnold filed his Rule 37 petition alleging five grounds for relief. Also on February 23, Arnold filed a motion for leave to file amended petition for postconviction relief pursuant to Rule 37 stating that counsel had recently been retained and the petition was filed as a "placeholder" petition in order to meet the deadline and requested a 120-day extension. On April 9, the circuit court granted Arnold's motion for leave to file

an amended petition until May 15. On April 17, Arnold filed a motion to reconsider his motion for leave requesting the full 120 days to file an amended petition. On April 24, the circuit court denied Arnold's motion to reconsider, and May 15 remained the deadline. On June 13, the State responded to Arnold's February 23rd Rule 37 petition. On June 18, the circuit court granted Arnold an extension to file his reply. On July 3, Arnold filed a motion to strike the State's response or, alternatively, for extension of time to reply to the State's response. On July 8, Arnold filed a second motion to reconsider the circuit court's April 9 order granting eighty-one days to file his amended petition. In the motion, Arnold stated that he suspected prison officials were interfering with legal mail to Arnold, trial counsel had not acted expeditiously in responding to Arnold's requests, and counsel's out-of-the-country trip and professional obligations afforded him little time to comply with the May 15 deadline. On July 25, the circuit court denied Arnold's second motion to reconsider and motion to strike the State's response and granted an extension of time for Arnold to reply.

On October 3, without holding an evidentiary hearing, based on Arnold's petition and the State's response, the circuit court denied the following claims: (1) trial counsel was ineffective for failing to investigate and present testimony by an independent DNA expert; (2) trial counsel was ineffective for failing to present proof of Arnold's physical disabilities and limitations; (3) trial counsel was ineffective for failing to object to an improper closing argument for the State;[1] and (4) trial counsel was ineffective for failing to call witnesses to

---

[1]Arnold did not appeal the circuit court's denial of relief on this claim.

testify regarding Arnold's character. The circuit court set a hearing for Arnold's remaining claim alleging that trial counsel was ineffective for failing to investigate other possible suspects, Robert Ozments and Tasha Bowling.

On November 8, 2021, the circuit court held a hearing on Arnold's remaining claim and on November 30, the circuit court entered an order denying Arnold's claim regarding counsel's failure to investigate Ozments and Bowling as possible suspects. Arnold brings this timely appeal and presents three points: (1) the circuit court erred in refusing to grant Arnold's repeated requests for a reasonable period of time to file an amended petition for Rule 37 relief; (2) the circuit court erred in finding that Arnold received effective assistance of counsel; and (3) the circuit court erred in denying three of Arnold's claims without holding an evidentiary hearing. We affirm.

## I. *Standard of Review*

"On appeal from a trial court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*" *Prater v. State*, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74.

"The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland* [*v. Washington*,

4

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]." *Henington v. State*, 2012 Ark. 181, at 3–4, 403 S.W.3d 55, 58. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783. *Hinton v. State*, 2019 Ark. 136, 7–8, 572 S.W.3d 381, 386–87.

With respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. *Banks v. State*, 2013 Ark. 147, 2013 WL 1491272. When a petitioner alleges ineffective assistance of counsel for failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Wertz v. State*, 2014 Ark. 240, at 4, 434 S.W.3d 895, 900 (citing *Moten v. State*, 2013 Ark. 503, 2013 WL 6327549 (per curiam)). To demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Hickey v. State*, 2013 Ark. 237, 428 S.W.3d 446. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id.* Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. *Id.* Finally, "[w]hen assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness." *Johnson v. State*, 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996) (internal citations omitted). "To review the circuit court's order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. *Howard*, 367 Ark. 18, 238 S.W.3d 24." *Hinton v. State*, 2019 Ark. 136, at 8–9, 572 S.W.3d at 387–88.

With regard to a circuit court's denial of an extension of time to file an amended petition, "our rules of criminal procedure do allow for the amendment of a Rule 37 petition, but only with leave of the court. Ark. R. Crim. P. 37.2(e). Our standard of review as to the denial of leave to amend is abuse of discretion; we determine whether the circuit court's decision was arbitrary or groundless." *Adams v. State*, 2013 Ark. 174, at 11–12, 427 S.W.3d 63, 70 (internal citations omitted). Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004); *O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004).

Finally, "when a Rule 37 petition is denied without a hearing, the circuit court 'shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings.' *See Marshall v. State*, 2020 Ark. 66, 594 S.W.3d 78; Ark. R. Crim. P. 37.3(a). Failure to make such findings is reversible error except when it can be determined from the record that the petition is wholly without merit or when it is conclusive on the face of the petition that no relief is warranted. *Id.*" *Rayburn v. State*, 2021 Ark. 98, at 8, 622 S.W.3d 155, 161–62. With these standards in mind, we turn to Arnold's appeal.

II. *Points on Appeal*

A. The Circuit Court Erred in Refusing to Grant Arnold's Repeated Requests for a Reasonable Period of Time to File an Amended Petition for Rule 37 Relief

For his first point on appeal, Arnold contends that the circuit court erred in refusing to grant Arnold's requests for additional time to amend his Rule 37 petition. Arnold requested 120 days, and the circuit court granted Arnold 81 days to amend his petition. In its order denying postconviction relief, the circuit court denied Arnold's request for additional time:

> If the Defendant had actual issues, he was given time to present them simply. If they had merit, the Court would consider them and allow Defendant and counsel to present evidence and facts in a Rule 37 hearing. . . . [I]nstead, counsel wished to conduct a fishing expedition for cognizable issues that he might discover–not ones that were already apparent. . . . The Court gave him a limited amount of time in which he could have developed these "other potential issues as well." Counsel for the Defendant ultimately made no use of the additional time . . . nor did he file any reply to the State's Response. . . . The Court is convinced by counsel's failure to make use of the time given him–though it was less than requested–that he has identified no additional issues beyond those presented in his initial Petition.

On appeal, Arnold contends that the time allotted was insufficient in a first-degree murder case that was tried to a jury with multiple lawyers and involves a life sentence. Arnold asserts the following to support his argument: his initial petition was filed by counsel without the benefit of a review of the trial transcript; the eighty-one days granted is "bizarre"; and the circuit court held firm to its deadline for his amended petition to be filed by May 15, 2019, but then permitted the State to file its response in violation of the twenty-day deadline imposed by Rule 37.2(f) of the Arkansas Rules of Criminal Procedure. Arnold further contends that his counsel provided legitimate reasons why additional time was needed, including, but not limited to, counsel being contacted to represent Arnold six days before the deadline for the petition to be filed; counsel prepared and filed Arnold's placeholder

petition two days prior to the deadline without reviewing the transcript; counsel was hired on March 7, 2019; counsel mailed Arnold multiple release forms for records from Arnold's trial counsel to sign and return which were delayed in transit and counsel did not receive access to those files until June 17; and the circuit court granted time for Arnold to reply to the State's response but declined to allow Arnold to raise new issues or a "backdoor expansion of the petition." Based on this, Arnold contends that the circuit court abused its discretion when it imposed an unreasonable deadline for counsel to file an amended petition.

The State responds that despite being afforded additional time to file his amended petition and additional time to file a reply to the State's response, Arnold did not file an amended petition or a reply. Further, the State responds that Rule 37.2(b) of the Arkansas Rules of Criminal Procedure does not provide for placeholder petitions; rather, pursuant to the rule, grounds for relief must be raised in the original petition unless the petition is denied without prejudice. Finally, the State responds that, notwithstanding counsel's reliance on having been recently hired, counsel is an experienced attorney in this area, and the eighty-one additional days was a reasonable amount of time to prepare an amended petition, and the circuit court did not abuse it discretion.

Rule 37.2(b) provides in pertinent part: "[a]ll grounds for relief available to a petitioner under this rule *must* be raised in his or her original petition unless the petition was denied without prejudice." Ark. R. Crim. P. 37.2 (2021) (emphasis added). Further, in *Walker v. State*, 367 Ark. 523, 525, 241 S.W.3d 734, 737 (2006), we explained that in

9

preparation of a postconviction petition, "a defendant's own knowledge of discussions with trial counsel, in combination with the record, would seem to provide a sufficient basis to articulate any areas of concern as to counsel's performance." We held that the circuit court did not abuse its discretion by requiring Walker to state with specificity the areas of concern about trial counsel's performance before it requires trial counsel to provide the files. In *Walker*, Walker did not gain access to trial counsel's files at all.

Here, counsel met with Arnold multiple times. Also, despite eventually obtaining trial counsel's files, Arnold failed to identify any claim that could have been brought if he had been granted more time. Despite extensions of time to file an amended petition and a reply to the State's response, Arnold did not file additional pleadings after his initial petition, nor did he identify how additional time would have aided in his preparation. Finally, Arnold contends that the circuit court played favorites by allowing the State to file a response 110 days after he filed his original petition. However, the State was not required to file a response, and the State's response was filed twenty-nine days after the deadline for filing the amended petition. Based on the record before us, we do not find merit in Arnold's argument that the circuit court abused its discretion when it granted Arnold eighty-one days to file his amended petition. We affirm the circuit court on this point.

### B. The Circuit Court Erred in Finding that Arnold Received Effective Assistance of Counsel and the Circuit Court Erred in Denying Claims Without an Evidentiary Hearing

We now turn to Arnold's claims of ineffective assistance of counsel. For his second and third points on appeal, Arnold asserts that the circuit court erred in denying relief by

10

finding that Arnold received effective assistance of counsel on four claims and also asserts that the circuit court erred when it denied relief without holding an evidentiary hearing on three of the four claims.

### 1. *Claim A: DNA expert*

For his first subpoint, Arnold contends that the circuit court erred in finding that he failed to show that counsel was ineffective for failing to present an independent DNA expert to support Arnold's third-party-guilt theory. Arnold further contends that the circuit court erred when it denied his claim without holding a hearing. The circuit court denied the claim as follows:

> Defendant does not suggest who this DNA might have belonged to. He simply asserts that calling a rebuttal expert would have met both prongs of *Strickland*. The Court is not convinced that it meets either prong. . . . Defendant has not named any potential DNA expert who would have testified to what he alleges, he provides no summary, and he offers nothing to show that this theoretical testimony would have been admissible. This claim fails the first prong of *Strickland* . . . Without showing what this testimony would have been beyond simply pointing to an illusory third party, the Court finds that any further such testimony would simply have been cumulative. It would not have changed the result at trial, and thus the second prong of *Strickland* is likewise not satisfied.

Arnold asserts that DNA evidence was crucial to the State's case; that defense counsel had a professional duty to investigate the presence of the DNA that was not Arnold's; and that counsel had a duty to seek DNA testing and utilize the results to demonstrate to the jury that Arnold was not the only person present at the victim's home the night of the murder. Arnold contends that if counsel had done this there is a reasonable probability that the result of the trial could have been different. Finally, Arnold asserts that the circuit court

11

engaged in speculation that counsel made a strategic decision on this claim and urges this court to reverse the circuit court.

Here, a review of the record demonstrates that defense counsel hired an independent DNA expert, Dr. Robert Reese. The record further demonstrates that Dr. Reese was identified and consulted during the trial, specifically during the testimony of the State's DNA expert witnesses. Further, Arnold has failed to explain how further investigation or presentation of additional testimony may have supported his argument. Based on this, Arnold has failed to meet his burden under the first *Strickland* prong because he has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness. The record demonstrates that counsel did, in fact, consult with an independent DNA expert. Because we conclude that the performance of Arnold's trial counsel was not deficient, we need not address the prejudice requirement, which is the second prong under *Strickland*. *Hinton*, *supra*.

Finally, Arnold contends that the circuit court should have conducted an evidentiary hearing on this issue. We do not find merit in this argument. Here, based on the record and our discussion above, the circuit court specifically referred to the record relied upon. Accordingly, the circuit court's decision to deny Arnold's petition on this point was not clearly erroneous because the record demonstrates that Arnold's claim is wholly without merit and we affirm.

### 2. *Claim B: other possible suspects*

12

For his second subpoint, Arnold contends that the circuit court erred when it rejected his claim that his trial counsel was ineffective by failing to investigate other possible suspects, specifically Robert Ozments and Tasha Bowling. Arnold alleged that Ozments and Bowling lived near Maureen and the church; up until the murder, the two had been borrowing money from Maureen which Maureen had recently put an end to; and after Maureen's murder, the two asked the pastor questions about what was found at the crime scene. Ozments and Bowling also asked the pastor for funds to travel, and both left the State the day after the murder. Arnold contends that both individuals informed church members that they would not be returning to the state. Arnold alleges that trial counsel was made aware of these suspicious activities but failed to conduct any independent investigation. Arnold further alleged that additional unidentified individuals had been going to Maureen's house in the weeks prior to her death—harassing her by knocking on her windows and doors at night— and trial counsel did not investigate this either. Arnold contends that trial counsel's alleged lack of investigation into other possible suspects was ineffective representation and that he was prejudiced. After a hearing on this claim, the circuit court denied Arnold relief:

> Defendant's counsel at trial, . . . Qualls . . . testified that he made multiple calls to the Defendant and visited him in the jail thirteen times during trial preparations. His co-counsel [Lott Rolfe] generally accompanied him on these visits. . . . He testified that he did investigate the Defendant's claims about Ozments and Bowling. . . . [Qualls] interviewed the deacon and pastor of the church about them. Neither pastor nor deacon tied the couple to the red truck the Defendant claimed was seen at the time of the crime. The Defendant's mother informed Qualls the couple had gone to a town in Mississippi that Qualls discovered did not exist. He found a town with a very similar name where a church was located that the couple were alleged to be attending or involved with in some manner. The pastor of this church had never heard of the couple, and he received no useful information.

. . .

Qualls [also] testified that he [investigated] . . . the victim's alleged harassment by an unknown party. He and co-counsel canvassed the neighborhood interviewing the victim's neighbors trying to find information about this harassment but were unsuccessful. . . . Qualls testified that the details given by the Defendant regarding [a] red truck changed constantly and that the neighbors never saw any truck other than the Defendant's which was parked behind the home around the time of the murder instead of his customary practice of parking in front of the house.

. . .

[Rolfe's] testimony matched Qualls' in that he stated he made many visits to the Defendant . . . that he canvassed the neighborhood with Qualls, and that nobody had seen any red truck. Rolfe testified that Qualls investigated the couple and hit a dead-end in Mississippi. Rolfe testified that they considered every scenario but none of the Defendant's theories of the case lined up with the evidence or struck them as credible.

The circuit court also found Arnold's counsel's decision not to proceed further was a reasonable strategic decision and even if counsel had proceeded, the outcome would not have been different.

Arnold contends that his counsel should have conducted a more thorough investigation and traveled to Mississippi where it was alleged the couple were residing. Arnold alleges that despite visiting with Arnold multiple times in jail prior to trial, counsel's investigation consisted of one phone call, and such was not a strategic or reasonable decision. Rather, Arnold contends that counsel's investigation was negligent, that it was not effective representation, and that Arnold suffered prejudice and but for counsel's errors and

14

omissions, there is a reasonable probability that the jury would have found there were other likely suspects in this case.

Here, counsel testified that they investigated Ozments and Bowling and other suspects by canvassing Maureen's neighborhood multiple times and interviewing witnesses. Counsel also testified that they contacted the church in Mississippi where the two individuals were reportedly going and spoke with two different church personnel who reported not knowing Ozments and Bowling or their whereabouts. Counsel further testified that they followed up on Arnold's mother's report of individuals harassing Maureen at night and Arnold's report about the red truck. Counsel testified that after multiple attempts to identify information about Ozments, Bowling, and other witnesses, they reached a dead end on their investigation. Based on the record before us, we cannot say the circuit court erred. Arnold has failed to prove that his counsel's performance fell below an objective standard of reasonableness. Because we conclude that the performance of Arnold's trial counsel was not deficient, we need not address the prejudice requirement. *See Hinton.* Accordingly, we affirm the circuit court on this point.

### 3. *Claim C: Arnold's physical disabilities*

For his third subpoint, Arnold contends that the circuit court erred in denying his claim that he received ineffective assistance of counsel when his counsel failed to present evidence of Arnold's physical disabilities. The circuit court denied Arnold's claim, stating in pertinent part,

> [T]he testimony presented at trial was that the Defendant did odd jobs around the house for the victim, that he could drive and fish, and that he occasionally performed caretaking duties at the church he attended with the victim. Additionally, the victim herself was in frail condition. . . . It strains credulity that the Defendant would not have been able to strangle a frail, elderly woman, regardless of his own alleged infirmities. The only allegation regarding the Defendant's current physical condition in the Petition is that he sometimes walks with a cane. The Defendant has provided no further evidence of this purported physical disability. The Court cannot say that failure to advance this theory, if a failure at all, would have changed the result at trial.

Arnold claims that his counsel failed to present proof of Arnold's physical disabilities and limitations, which would have prevented him from inflicting the type of attack that occurred in this case. Arnold asserts that the evidence in this case suggested that the attack on Maureen required physical strength that Arnold did not have. Arnold asserts that trial counsel was aware of Arnold's physical limitations but, inexplicably, never followed up on the issue; never explored the possibility that his physical limitations prevented him from attacking Maureen; and never looked at Arnold's medical records or consulted with Arnold or a medical expert to render an opinion. Arnold alleges that his counsel's failures in this case were therefore not based on reasonable strategy or trial tactics, and regardless of whether the jury believed Arnold was present that evening, proof of Arnold's physical condition would have created reasonable doubt as to whether Arnold was physically capable of committing the crime. The State responds that the record establishes Arnold performed odd jobs, operated Maureen's flat-bottom boat and fished on the lake and helped Maureen—whom Arnold described as "quite heavy"—up onto the porch after she had fallen.

Here, the record demonstrates that Arnold failed to present witnesses or evidence regarding his physical disabilities. Instead, the only allegation regarding Arnold's current physical condition is that at times, Arnold walks with a cane. Arnold provided no further evidence of his alleged physical limitations. It is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *See Wertz*. Accordingly, based on our standard of review and the record before us, Arnold has failed to meet the first prong of the *Strickland* standard. Because we conclude that the performance of Arnold's trial counsel was not deficient, we need not address the prejudice requirement. *See Hinton*.

Finally, Arnold contends that the circuit court should have conducted an evidentiary hearing on this issue. We are unpersuaded. Here, based on the record and our discussion above, the circuit court specifically referred to the record relied upon. Accordingly, the circuit court's decision to deny Arnold's petition on this point was not clearly erroneous, and we affirm.

### 4. *Claim E: Arnold's character*

For his fourth subpoint, Arnold contends that the circuit court erred when it denied relief, alleging that his trial counsel was ineffective for failing to call witnesses to testify regarding Arnold's character. Arnold contends that if counsel had called witnesses "including Gary Brewer, Pastor Mike Boyd, and others[,]" they all could have testified that Arnold worked at the church; that he had a good relationship with Maureen; Maureen was a close friend of Arnold's mother; that he often took care of Maureen 's husband prior to

17

his death; and that Arnold had no violent tendencies. Arnold contends that his counsel's failure to call these character witnesses was ineffective representation, and but for counsel's errors, there is a reasonable probability that the jury would have reached a different result. In denying this claim, the circuit court found in pertinent part: "Defendant names two witnesses and speculates about others, recites what their testimony 'could' have been, and makes no showing that it would have been admissible. . . the Defendant has not overcome his burden in showing that such testimony, if presented, would have changed the outcome."

Here, the record demonstrates that Arnold named two witnesses and identified what their testimony could have been but did not provide a summary of their testimony or address admissibility. Further, the witnesses would have been subject to cross-examination as prior evidence of Arnold's bad acts would have been allowed on cross-examination. *Reel v. State*, 288 Ark. 189, 702 S.W.2d 809 (1996). Although Arnold contends that the circuit court's comments about the existence of any such bad acts is "rank speculation and conjecture," a forensic evaluation revealed that he had methamphetamine, marijuana, and drug paraphernalia in his home and that Arnold pled no contest to theft by receiving in 2004. We also note that during the guilt phase at trial, the jury heard from Lisa Olsen, who testified that Maureen was Pauline's best friend. During the sentencing phase, Pauline Arnold, Arnold's mother, testified regarding Arnold's peaceful nature, that he was a member of the church, that Arnold had helped Maureen's disabled husband get in and out of bed prior to his death; and that he had never hurt anyone. Ritchie Arnold, Arnold's brother, also testified during sentencing that Arnold was a good person, would help anybody and do anything for

18

people, and was trustworthy and a hard worker. Jeanine Arnold, Arnold's wife, testified that Arnold was a good father and a good, sweet person. Accordingly, based on our discussion above, Arnold has failed to meet his burden under the first *Strickland* prong because he has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness. Finally, Arnold contends that the circuit court should have conducted an evidentiary hearing on this issue. We disagree. The record demonstrates that the circuit court specifically referred to the record relied upon. Accordingly, based on the record before us, we do not find error and affirm the circuit court on this point.

Based on our standard of review, the circuit court did not err in denying Arnold's petition for post-conviction relief, and we affirm.

Affirmed.

*Craig Lambert*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.