Cite as 2024 Ark. 30

# SUPREME COURT OF ARKANSAS

**No.** CR–23–354

| | | |
|---|---|---|
| LEMUEL S. WHITESIDE | | **Opinion Delivered:** March 14, 2024 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-09-1183] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE KAREN WHATLEY, JUDGE |
| | APPELLEE | AFFIRMED. |

**CODY HILAND, Associate Justice**

Lemuel Whiteside appeals the Pulaski County Circuit Court's denial of his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. For reversal, Whiteside argues both violations of the United States Constitution and ineffective assistance of counsel. Whiteside's claims do not merit postconviction relief under the Rule. Therefore, we affirm.

## I. *Background*

Whiteside was convicted of capital felony murder, aggravated robbery, and a firearm enhancement for which he received sentences of life, thirty-five years, and fifteen years, respectively. As this case has already been before this court on three separate occasions, further details can be found in Whiteside's three prior appeals. Briefly addressing the procedural history, in *Whiteside I*, we affirmed Whiteside's convictions and sentences on

direct appeal.[1] In *Whiteside II*, this court reversed and remanded for resentencing on the capital-murder sentence only; his other convictions and sentences for aggravated robbery and the firearm enhancement were reaffirmed.[2] And in *Whiteside III*, we affirmed the denial of postconviction relief requesting a new sentencing hearing on the aggravated-robbery charge.[3] Now, in his fourth appeal, Whiteside again seeks relief from the denial of postconviction relief pursuant to Rule 37. As stated *supra*, we affirm.

## II. *Standard of Review*

This court reviews the circuit court's decision on Rule 37.1 petitions for clear error. *Gordon v. State*, 2018 Ark. 73, 539 S.W.3d 586. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Lacy v. State*, 2018 Ark. 174, 545 S.W.3d 746.

## III. *Eighth Amendment*

Whiteside's first claim is one of an alleged Eighth Amendment violation rather than one of ineffective assistance of counsel. Specifically, Whiteside claims that instructing the jury it could consider a life-sentence option on the aggravated-robbery charge violated his Eighth Amendment right, noting that in *Graham v. Florida*, the United States Supreme

---

[1]*Whiteside v. State*, 2011 Ark. 371, 383 S.W.3d 859 (*Whiteside I*).
[2]*Whiteside v. State*, 2013 Ark. 176, 426 S.W.3d 917 (*Whiteside II*).

[3]*Whiteside v. State*, 2019 Ark. 349, 588 S.W.3d 720 (*Whiteside III*).

Court ruled that the Eighth Amendment does not allow a juvenile offender to be sentenced to life in prison for a nonhomocide offense.[4]

Whiteside relies on *Hicks v. Oklahoma*, 447 U.S. 343 (1980), to support his argument that he is entitled to relief. In *Hicks*, the United States Supreme Court vacated a sentence imposed on a defendant due to his status as a habitual offender. The jury was instructed that it must impose a sentence of forty years. That mandatory sentence was later declared unconstitutional, and a new sentencing range of no less than ten but which included a potential sentence of forty years, was instituted. *Hicks*, 447 U.S. at 346.

Here, the circuit court distinguished *Hicks* by stating that Whiteside's jury was provided the appropriate term of years when instructed—ten to forty years—*and* it sentenced him within that statutory range—thirty-five years. Thus, the "sentence was not imposed in violation of the United States Constitution or Arkansas law."

To the extent that Whiteside attempts to argue this as a freestanding claim, the argument is not cognizable. Trial errors, including constitutional ones, that could have been raised on direct appeal cannot be raised in a Rule 37 proceeding. *Howard v. State*, 367 Ark. 18, at 26, 238 S.W.3d 24, at 32 (2006). This court previously held that Whiteside's Eighth Amendment argument could have been raised in his direct appeal. *See Whiteside III.* Therefore, the circuit court did not clearly err by denying Whiteside's claim on this issue.

IV. *Ineffective Assistance of Counsel*

We review ineffective-assistance-of-counsel claims using the two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires the petitioner to show both

---

[4] *Graham v. Florida*, 560 U.S. 48 (2010).

that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Holland v. State*, 2022 Ark. 138, at 2, 645 S.W.3d 318, 320. Our review of counsel's performance begins with the presumption that counsel was effective. *Id*. at 2. To overcome this presumption and show a deficiency in counsel's conduct, "[t]he petitioner has the burden of identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment." *Id*. Even when counsel's conduct and professional judgment were deficient, the petitioner's ineffective-assistance claim will fail unless the petitioner can show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*.

A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Douglas v. State*, 2018 Ark. 89, 540 S.W.3d 685. Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *McClinton v. State*, 2018 Ark. 116, 542 S.W.3d 859. Once we determine that a petition fails on one prong, we need not address the other prong under *Strickland*. *Arnold v. State*, 2022 Ark. 191, at 12, 653 S.W.3d 781, 789.

A. Written Jury Instruction at Trial and Argument on Appeal

In his second and third points on appeal, Whiteside claims that his trial and appellate attorneys failed to provide effective assistance due to their respective failures to protect his

4

previously stated Eighth Amendment claim by neglecting to preserve error by (1) not tendering a written jury instruction deleting the life sentence as an option and (2) failing to raise the claimed error on direct appeal or on remand from the Supreme Court.

The circuit court found that, although no written instruction deleting the life-sentence option was proffered, trial counsel made a sufficient enough record on the *Graham* issue to preserve the argument. Further, the circuit court found that because the jury did not sentence Whiteside to life imprisonment on the aggravated-robbery charge but instead sentenced him to thirty-five years, there was no evidence to show that a different jury instruction would have resulted in a different sentence.

This is the correct conclusion. While it is true that *Graham* rendered life sentences of juveniles for nonhomocide offenses unconstitutional, there is an important caveat. *Graham only* applies to juvenile offenders who did not commit homicide. "Juvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide." *Graham*, 560 U.S. at 63. This court has affirmed a juvenile's life sentence for aggravated robbery when the juvenile was also convicted of first-degree murder, stating, "*Graham* is simply inapplicable." *See Early v. Kelley*, 2018 Ark. 364, 562 S.W.3d 205.

Thus, if Whiteside had only been charged with aggravated robbery and received a life-sentence for aggravated robbery, *Graham* would have applied. That was not the case here. Whiteside was charged with a homicide offense—felony capital murder—and did not receive a life sentence. *Graham* is, therefore, even more inapplicable in this case than it was in *Early*.

5

Failure to make a meritless argument is not deficient performance. *See Adams v. State*, 2013 Ark. 174, at 22, 427 S.W.3d 63, 76. As Whiteside fails to demonstrate that both his counsel's performance was deficient and that he was prejudiced as a result, he fails to meet his burden under *Strickland*. We affirm.

## B. Statement of Co-Defendant

Whiteside's fourth argument is that his counsel was ineffective in failing to offer the testimony or statement of his co-defendant, Cambrin Barnes, as mitigating evidence for his aggravated-robbery sentence. He alleges that had trial counsel called Barnes or introduced the statement he made to the police, the outcome of the trial would have been different. He is incorrect.

Generally, the decision to call a witness is a trial strategy and outside the purview of Rule 37. *Arnold, supra.* Counsel's decisions concerning mitigation evidence included matters of trial strategy and tactics. *Johnson v. State*, 2020 Ark. 168, 598 S.W.3d 515. This court has explained that matters of trial strategy and tactics fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Noel v. State*, 342 Ark. 35, 41–42, 26 S.W.3d 123, 127 (2000). The fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895. To review the circuit court's order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. *Howard*, 367 Ark. 18, 238 S.W.3d 24.

At the Rule 37 hearing, Whiteside introduced the testimony of one of his trial attorneys, Joseph Tobler, and the transcribed statement Barnes gave to the police. Tobler

testified they did not offer Barnes's statement because they thought it was inadmissible hearsay. Barnes's statement relays that Barnes shot London "because he was scared for [his] life when [London] rushed toward [him]" and didn't want to "take the chance of [London] taking the gun from [him] and shooting [him.]"

During the initial trial, the State presented evidence that Barnes shot the victim. There was no allegation that Whiteside pulled the trigger. Instead, the evidence was that Whiteside provided the firearm used by Barnes but that Barnes shot London. The jury was aware of Barnes's reason for shooting London even without this statement because two eyewitnesses testified that Barnes shot London after London lunged at him. Barnes's statement would have only added an additional witness painting Whiteside as the mastermind of the robbery and the provider of the murder weapon. Barnes's statement, as the State argues, would also have tipped the scale on the issue regarding Whiteside's moral culpability to the aggravated robbery because it would have echoed the testimony of another witness that Barnes saw Whiteside standing over London after he had been shot, possibly to steal London's money.

On this point, the circuit court found that "even if admissible, a review of [Barnes's statement] shows that [it] could have been more harmful than helpful to [Whiteside.]" It concluded Whiteside's counsel was not deficient and rejected the claim. In light of the testimony and our review of the record, we agree. This circuit court's rejection of this claim was not clearly erroneous; therefore, we must affirm.

C. Psychological Records

7

In his fifth point, Whiteside alleges trial counsel was deficient in failing to investigate or offer Whiteside's mental state and history of psychiatric treatment for the purpose of mitigation.

At the hearing, Tobler testified that while he was aware of Whiteside's past hospitalizations from the report of Whiteside's pretrial competence-and-fitness evaluation, he did not recall seeking records from those hospitalizations because he believed that admitting the mental-health records available to him would have opened the door to a variety of negative evidence.

Dr. Benjamin Silber, a licensed clinical psychologist, testified that he examined Whiteside's pretrial mental-health records and noted that Whiteside had been diagnosed with ADHD, which would cause impulsivity, impetuosity, and rash and impulsive decision-making, and borderline intellectual functioning, which when compounded with his ADHD would make it challenging for Whiteside to make good decisions. On cross-examination, Silber admitted that Whiteside's records contained a range of negative information, including notations that Whiteside carried guns, threatened to kill his family, battered his sister with a belt, frequently bullied, threatened, and intimidated others, had a history of setting fires, had a history of cruelty to animals, admitted wanting to kill people, and showed a lack of remorse. Silber noted the records further showed several attempts at rehabilitation made in the juvenile-justice system and admitted that this information would be fair game in cross-examination of a mental-health expert. He conceded that it was impossible to know how a jury would weigh or view these competing pieces of evidence.

On this point, the circuit court found that "[b]ased on the records available to [Whiteside's] counsel at the time of trial which included significant negative information . . . trial counsel's decision not to call an expert regarding potential mitigation based on [Whiteside's] history of psychiatric treatment falls within a matter of professional judgment and is not a basis for finding counsel deficient."

Tobler made a strategic decision not to introduce Whiteside's mental-health evidence because the State could have rebutted it with potentially damaging evidence. Because Whiteside fails to overcome the presumption that his trial counsel's conduct was reasonable professional assistance, the circuit court was not clearly erroneous in denying relief on this claim.

## V. *Cumulative Error*

In his final point, Whiteside argues the circuit court's reliance on Arkansas law precluding cumulative review for ineffective-assistance claims, while consistent with our own precedent, conflicts with *Strickland* and the Sixth Amendment's guarantee of effective assistance of counsel. He asserts that this court should overturn its long-held precedent barring cumulative-error analysis on *Strickland* claims.[5]

This court applies a strong presumption in favor of the validity of prior decisions and will uphold them unless great injury or injustice would result. *Houghton v. State*, 2015 Ark.

---

[5]This court has consistently refused to recognize the doctrine of cumulative error in allegations of ineffective assistance of counsel. *See, e.g.*, *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123; *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999); *see also State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002); *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001) (holding that it was error for the circuit court to entertain a claim of cumulative error in a *Strickland* analysis).

252, at 12, 464 S.W.3d 922, 930–31. "The party asking [this court] to overrule a prior decision has the burden of showing . . . injustice or great injury." *Id.* at 12, 464 S.W.3d at 931. Whiteside has made no such showing here. Accordingly, we decline to overrule our previous decisions refusing to apply the cumulative-error doctrine to claims of ineffective assistance of counsel.

We find no error in the circuit court's conclusion that Whiteside did not meet his burden as it relates to any allegations set forth in his Rule 37 petition.

Affirmed.

*J. Thomas Sullivan* and *Mark F. Hampton*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.